DMJ:LTG
F# 2009RO1781



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against -

RENE SOTO,
CARLOS CARRASCO,
BENJAMIN CARRASCO and
AZARIAS MERCADO,

          Defendants.

- - - - - - - - - - - - - - - - - X

- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against -

THE PREMISES KNOWN AND DESCRIBED AS
851 KINGS PARKWAY, BALDWIN, NEW
YORK, A SINGLE FAMILY TUDOR STYLE
HOUSE LOCATED ON THE NORTH SIDE OF
KINGS PARKWAY BETWEEN DECATUR STREET
AND CLIFTON STREET ("SUBJECT PREMISES
#1");

THE PREMISES KNOWN AND DESCRIBED AS
339 UNQUA ROAD, MASSAPEQUA, NEW
YORK, A SINGLE FAMILY SPLIT-LEVEL
STYLE HOUSE LOCATED ON THE WEST SIDE
OF UNQUA ROAD BETWEEN CONDE LANE AND
BURTON LANE ("SUBJECT PREMISES #2");

THE PREMISES KNOWN AND DESCRIBED AS
80 DIETZ STREET, CENTRAL ISLIP, NEW
YORK, A SINGLE FAMILY SPLIT-LEVEL
STYLE HOUSE WITH YELLOW VINYL SIDING
LOCATED IN THE CENTER OF THE
CUL-DE-SAC BETWEEN CHURCH STREET AND
PINEVILLE ROAD ("SUBJECT PREMISES #3")

- - - - - - - - - - - - - - - - - X

UNDER SEAL

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF SEARCH
WARRANTS AND ARREST WARRANTS

(T. 21, U.S.C., § 846)

EASTERN DISTRICT OF NEW YORK, SS:

ENZO GRGUROVICH, being duly sworn, deposes and says that he is a Postal Inspector with the United States Postal Inspection Service, duly appointed according to law and acting as such.

Upon information and belief, in or about and between January 12, 2010 and the present, within the Eastern District of New York and elsewhere, the defendants RENE SOTO, BENJAMIN CARRASCO, CARLOS CARRASCO and AZARIAS MERCADO, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved 100 kilograms or more of a mixture or substance containing marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1).

(Title 21, United States Code, Section 846)

Further, upon information and belief there is probable cause to believe that there will be kept and concealed at the three premises known and described as THE PREMISES KNOWN AND DESCRIBED AS 851 KINGS PARKWAY, BALDWIN, NEW YORK, A SINGLE FAMILY TUDOR STYLE HOUSE LOCATED ON THE NORTH SIDE OF KINGS PARKWAY BETWEEN DECATUR STREET AND CLIFTON STREET ("SUBJECT PREMISES #1"); THE PREMISES KNOWN AND DESCRIBED AS 339 UNQUA ROAD, MASSAPEQUA, NEW YORK, A SINGLE FAMILY SPLIT-LEVEL STYLE HOUSE LOCATED ON THE WEST SIDE OF UNQUA ROAD BETWEEN CONDE LANE AND BURTON LANE ("SUBJECT PREMISES #2"); THE PREMISES KNOWN AND DESCRIBED AS 80 DIETZ STREET, CENTRAL

ISLIP, NEW YORK, A SINGLE FAMILY SPLIT-LEVEL STYLE HOUSE WITH YELLOW VINYL SIDING LOCATED IN THE CENTER OF THE CUL-DE-SAC BETWEEN CHURCH STREET AND PINEVILLE ROAD ("SUBJECT PREMISES #3) within the Eastern District of New York, certain property, namely the items set forth on ATTACHMENT A hereto, all of which constitute evidence, fruits and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846. The items to be seized include any of the items listed in ATTACHMENT A that are maintained within boxes or other closed or locked containers, including safes and other containers that may be further secured by key locks or combination locks of various kinds.

I.  INTRODUCTION

1.  I have been a Postal Inspector with the United States Postal Inspection Service ("USPIS") for approximately five years. During my tenure with the USPIS, I have participated in numerous narcotics investigations, during the course of which I have conducted physical and wire surveillance, executed search warrants, and reviewed and analyzed recorded conversations and records of drug traffickers. Through my training, education and experience -- which has included debriefing numerous cooperating drug traffickers, conducting numerous searches of locations where drugs and money have been found, and conducting surveillance on numerous occasions of individuals engaged in drug trafficking -- I have become familiar with the manner in which illegal drugs are

3

imported and distributed, the method of payment for such drugs, and the efforts of persons involved in such activity to avoid detection by law enforcement.

2.   The facts set forth in this affidavit are based on my personal knowledge and observations, my discussions with members of the Drug Enforcement Administration task force and other law enforcement officers, my review of reports written by other law enforcement officers, my review of telephone records, my discussions with other individuals, my review of documents related to this investigation, including telephone records and my training and experience.

The source of your deponent's information and the grounds for his belief are as follows:[1]

II.   DEFENDANTS

3.   Defendant RENE SOTO is a forty-two year old Hispanic male believed to be living at SUBJECT PREMISES #1.

4.   Defendant CARLOS CARRASCO is a thirty-one year old Hispanic male believed to be living at SUBJECT PREMISES #2.

5.   Defendant BENJAMIN CARRASCO is a thirty-four year old Hispanic male believed to be living at SUBJECT PREMISES # 3.

6.   Defendant AZARIAS MERCADO is twenty year old Hispanic male believed to be living at 34 Cypress Avenue,

---

[1]   Because the purpose of this Affidavit is solely to set forth probable cause, I have not set forth all facts concerning this investigation of which I am aware.

Brentwood, New York.

7.   In March 2010, the National Intelligence Unit of the USPIS detected a pattern in the manner in which Priority Mail parcels were being shipped from California to various locations across the United States.   Subsequent investigation revealed that the boxes were being shipped by a marijuana trafficking organization based in California to various locations on Long Island via United States Priority Mail.[2]   The boxes were almost identical in size, packaging and labeling and had nearly sequential Priority Mail Delivery confirmation numbers suggesting that one individual was shipping all of the parcels.   Moreover, nearly all of the purported senders and recipients were actually fictitious names and addresses.   Often the recipients name was an intentionally misspelled version of a real individual.   Subsequent investigation revealed that the recipients of the cardboard boxes containing marijuana regularly shipped cardboard boxes to California containing U.S. currency.

8.   On March 26, 2010, defendant CARLOS CARRASCO came to the Smithtown Post Office to retrieve two brown cardboard boxes mailed from California via Priority Mail, believed to contain marijuana.   The boxes were addressed to "CNB Realty Management[3] at

---

[2]   The organization also shipped nearly identical boxes of marijuana to various locations across the United States.

[3]   Several law enforcement indicies checks revealed that CNB Realty is a non-existent company and that 400 Wheeler Avenue is a

400 Wheeler Avenue, Suite 224, Hauppauge, New York."[4]  At the post office, defendant CARLOS CARRASCO produced a United States Passport in the name of CARLOS CARRASCO, passport number 453009695.  The defendant CARLOS CARRASCO then took possession of the two boxes believed to contain marijuana and exited the location.

9.   On March 26, 2010, defendant BENJAMIN CARRASCO came to the Amityville Post Office to retrieve two brown cardboard boxes mailed from California via Priority Mail, believed to contain marijuana.  The boxes were addressed to a non-existent company in Amityville, New York.  At the post office, defendant BENJAMIN CARRASCO produced a driver's license in the name BENJAMIN CARRASCO, NYS Driver's License number 525440282.   Then, the defendant BENJAMIN CARRASCO advised the post office clerk that the boxes were actually his brother CARLOS CARRASCO'S boxes and provided the telephone number (631) 327-7538 as a contact number for defendant CARLOS CARRASCO.[5]   Finally, BENJAMIN CARRASCO took possession of the two boxes believed to contain marijuana and exited the location.

10.   On March 26, 2010, a postal carrier attempted

―――――――――――

non-existent location in Hauppauge, New York.

[4]   Earlier that day, an individual identifying himself as CARLOS CARRASCO contacted the Smithtown Post Office and, using the delivery confirmation numbers assigned to the boxes, advised that the two cardboard boxes were his and that they contained an erroneous delivery address.

[5]   A records check reveals that this telephone number is a cellular telephone number registered to CARLOS CARRACO.

to deliver two brown cardboard boxes believed to contain marijuana sent via Priority Mail from California to Patchogue, New York.  The boxes were addressed to "Azaras Mecado" at "224 East Main Street, Patchogue, New York" a commercial location in Patchogue, New York. As further investigation revealed that no one at the location knew "Azaras Mecado," a notice was left at the building and the boxes were returned to the Patchogue Post Office.

10.  On March 29, 2010, an individual using telephone number (646) 464-4168[6/] contacted the Patchogue Post Office and claimed that the boxes were his and that he worked at a law office at 224 East Main Street in Patchogue.  Later that day, defendant AZARIAS MERCADO came to the Patchogue Post Office in possession of the notice left by the postal carrier at the Main Street address. Defendant MERCADO produced a driver's license in the name AZARIAS MERCADO, NYS Driver's License number 546735570.  Defendant MERCADO took possession of the two cardboard boxes believed to contain marijuana, exited the post office and placed the boxes in an SUV. Law enforcement agents followed defendant MERCADO to 224 East Main Street in Patchogue.  Agents later observed defendant MERCADO give the two boxes to defendant BENJAMIN CARRASCO.  Defendant BENJAMIN CARRASCO then placed the boxes believed to contain marijuana in his 2009 Toyota Camry, NYS license plate ELD3827 (the Camry) and drove away from the location.

---

[6/]   A records check reveals that this telephone number is a cellular telephone number registered to AZARIAS MERCADO.

11.   On April 9, 2010, an unidentified male (UM #1) was captured on video surveillance inside of the North Torrance, California Post Office mailing two cardboard boxes via Priority Mail to Hauppauge, New York, believed to contain marijuana (boxes 35561 and 35578).   The labels on the boxes identified the sender as "World Integrated Media, 445 S. Douglas Street, El Segundo, CA 90245"[7] and the recipient as "CNB Realty Management, 400 Wheeler Road, Suite 224, Hauppauge, New York."[8]  Postal records reveal that box 35578 was mailed at 3:25 p.m. and weighed 27 pounds 4 ounces and box 35561 was mailed at 3:29 p.m. and weighed 28 pounds 10 ounces.

12.   Also on April 9, 2010, two cardboard boxes believed to contain marijuana were mailed via Priority Mail from the Torrance, California Post Office to Brentwood, New York (boxes 35585 and 35608).   The labels on the boxes identified the sender as "Art's Custom Pillows, 2301 W. 250th Street, Torrance, C.A. 90501"[9] and the recipient as "C. Mullen, 37 Harrison Street, Brentwood, New York 11717."[10]  Postal records reveal that box 35585 was mailed at

---

[7]    Checks of several law enforcement indices revealed that World Integrated Media is a non-existent company.

[8]    Checks of several law enforcement indices revealed CNB Realty Management is a **non-existent company and** 400 Wheeler Road in Hauppauge is a non-existent location.

[9]    Checks of several law enforcement indices revealed that Art's Custom Pillows is a non-existent company.

[10]    Checks of several law enforcement indices revealed that no individual named "C. Mullen" is associated with that legitimate

8

3:47 p.m. and weighed 26 pounds, 14 ounces and box 35608 was mailed at 3:47 p.m. and weighed 26 pounds, 11 ounces.

13.   Also on April 9, 2010, one cardboard box believed to contain marijuana was mailed via Priority Mail from a Post Office in Los Angeles, California to Amityville, New York (35646). The label on the box identified the sender as "Franklin Design Company, 900 E. Watson Center Road, Carson, C.A. 90745"[11] and the recipient as "B. Caruso, 298 County Line Road, Amityville, New York 11701."[12]  Postal records reveal that box 35646 was mailed at 4:53 p.m. and weighed 26 pounds, 15 ounces.

14.   Also on April 9, 2010, two cardboard boxes believed to contain marijuana were mailed via Priority Mail from a Post Office in Inglewood, California to Massapequa, New York (35547 and 35554).  The labels on the boxes identified the sender as "Franklin Design Company, 900 E. Watson Center Road, Carson, C.A. 90745" and the recipient as "United Home Solutions, 339 Unqua Road, Massapequa, New York" (SUBJECT PREMISES #2).[13]  Postal records

residential address.

[11]    Checks of several law enforcement indices revealed that Franklin Design Company is a non-existent company.

[12]    Between April 2010 and June 2010, law enforcement agents observed both defendant BENJAMIN CARRASCO and defendant CARLOS CARRASCO in and around this location on multiple occasions. Checks of several law enforcement indices revealed that no individual named "B. Caruso" is associated with that legitimate residential address.

[13]    Checks of several law enforcement indicies revealed that United Home Solutions is a non-existent company.

reveal that box 35547 was mailed at 4:26 p.m. and weighed 26 pounds, 12 ounces and box 35554 was mailed at 4:28 p.m. and weighed 26 pounds, 13 ounces.

15.   On April 12, 2010, law enforcement stopped four of the above-described boxes (35561, 35578, 35585 and 35608) believed to contain marijuana.   Law enforcement seized boxes 35561 and 35608, but placed boxes 35578 and 35585 back into the mail for delivery.

16.   On April 12, 2010, box 35585 was delivered to 37 Harrison Street, Brentwood, New York.   Surveillace was established at the location prior to delivery.   Agents observed box 35585 being delivered to the house.   Then, approximately two hours later, agents observed the Camry drive up to the house and a male Hispanic exit the Camry and enter the location.

17.   On April 14, 2010, defendant BENJAMIN CARRASCO arrived at the Smithtown Post Office driving the Camry.   Defendant BENJAMIN CARRASCO entered the post office, produced NYS Driver's License 535440282 in the name BENJAMIN CARRASCO, and picked up box 35578.   Thereafter, defendant BENJAMIN CARRASCO went to SUBJECT PREMISES #3.   Box 35578 was left in the Camry.   Later that day, defendant BENJAMIN CARRASCO left SUBJECT PREMISES #3 and drove to 289 County Line Road, Amityville, New York.   At the County Line Road address, defendant BENJAMIN CARRASCO removed box 35578 from the Camry and gave the box to CARLOS CARRASCO.

10

18.   On April 19, 2010, boxes 35561 and 35608 were opened pursuant to a search warrant authorized by the Honorable William D. Wall, United States Magistrate Judge, Eastern District of New York (10-M-436 and 10-M—437).   Boxes 35561 and 35608 each contained approximately 20 pounds of marijuana and were almost identically packaged.

19.   On April 29, 2010, a brown cardboard box was seized at a post office in Manhattan, New York and was opened pursuant to a search warrant authorized by the Honorable James L. Cott, United States Magistrate Judge, Southern District of New York (10-M-896). The box contained approximately $175,000.   The label on the box identified the sender as "Richard Johnson, 367 West 35th Street, New York, New York 10001" and the recipient as "Mad Pace, 1212H El Camino Real, STE 262, San Bruno, California 94066."

20.   On May 7, 2010, law enforcement agents went to 367 West 35th Street, New York, New York.   Inside of the vestibule of the building, a note was affixed to the door that said, "Please leave delivery for Richard Johnson with Super at Apt # 6.   Thank you R. Johnson."

21.   In 1999, defendant RENE SOTO was arrested for sale and possession of marijuana and provided 367 West 35th Street, New York, New York as his residence.   In 2004, defendant RENE SOTO was arrested for violation of an order of protection and again provided the West 35th Street address as his residence.   However, when

11

defendant SOTO was arrested in 2002 and 2003 for assault and violation of an order of protection he provided SUBJECT PREMISES #1 as his residence.   Defendant SOTO's NYS Driver's license lists SUBJECT PREMISES #1 as his residence.   In addition, defendant SOTO has two automobiles registered in his name at SUBJECT PREMISES #1.

22.   Records checks also reveal that the current occupant of Apartment #6 at 367 West 35th Street is Inocencia Rivera. Analysis of the records of cellular telephone (631) 241-0557 registered to defendant BENJAMIN CARRASCO and provided by him to the Postal Service and the records of cellular telephone (631) 327-7538 registered to defendant CARLOS CARRASCO and provided by him at the time of his arrest in 2010 for driving with a suspended license, reveal almost 200 telephone calls to cellular telephone number (646) 226-7909 which was provided by defendant SOTO to law enforcement at the time of one of his arrests.   (646) 226-7909 is registered to Inocencia Rivera 367 West 35th Street, Apartment #6, New York, New York.

23.   On May 12, 2010, two cardboard boxes believed to contain marijuana were mailed via Priority Mail from a Post Office in Gardena, California to Mount Sinai, New York (35738 and 35745).   The labels on the boxes identified the sender as "Franklin Design Company, 900 E. Watson Center Road, Carson, C.A. 90745"[14]/

---

[14]/   As set forth *supra*, Franklin Design Company is a non-existent company.

and the recipient as "Andre Speraous, 92 Shore Road, Mount Sinai, New York 11766."[15]  Postal records reveal that box 35745 was mailed at 4:57 p.m. and weighed 23 pounds, 13 ounces and box 35738 was mailed at 5:01 p.m. and weighed 22 pounds, 12 ounces.

24.   On May 12, 2010, two cardboard boxes believed to contain marijuana were mailed via Priority Mail from a Post Office in Hawthorne, California to Bayshore, New York (35752 and 35769).  The labels on the boxes identified the sender as "Auto Specialities, 12788 Washington Blvd., Culver City, C.A. 90066"[16] and the recipient as "T. Janilus, 1136 Martinstein Avenue, Bayshore, New York 11766."[17]  Postal records reveal that box 35769 was mailed at 5:42 p.m. and weighed 23 pounds, 11 ounces and box 35752 was mailed at 5:47 p.m. and weighed 23 pounds, 8 ounces.

25.   On May 12, 2010, two cardboard boxes believed to contain marijuana were mailed via Priority Mail from a Post Office in Long Beach, California to Patchogue, New York (35783 and 35776).  The labels on the boxes identified the sender as "M&J Designes, 906 Belson Street, Torrance, C.A. 90502"[18] and the

---

[15]   An individual named Andrew Spero is associated with the Shore Road address.

[16]   Checks of several law enforcement indicies revealed that Auto Specialities is a non-existent company.

[17]   An individual named Traci Jenulis is associated with the Martinstein Avenue address.

[18]   Several indices check revealed that M&J Designs is a non-existent company.

13

recipient as "Arios Mercado, Suite B, 224 East Main Street, Patchogue, New York 11722."[19]  Postal records reveal that box 35783 was mailed at 2:11 p.m. and weighed 22 pounds, 3 ounces and box 35776 was mailed at 2:10 p.m. and weighed 22 pounds, 1 ounce.

26.  On May 14, 2010, a law enforcement officer went to 1136 Martinstein Avenue, Bayshore, New York in possession of boxes 35769 and 35752.  An individual named Traci Jenulis accepted delivery of the boxes.  Approximately thirty minutes later, defendant BENJAMIN CARRASCO arrived at the location in the Camry. Thereafter, defendant BENJAMIN CARRASCO and Traci Jenulis were observed placing boxes 35769 and 35752 on the back seat of the Camry.  The boxes were visible through the Camry windows. Defendant BENJAMIN CARRASCO then drove the Camry to 289 County Line Road, Amityville, New York and entered the house for approximately twenty minutes.  Thereafter, defendant BENJAMIN CARRASCO exited the location and drove with the two boxes in the Camry to SUBJECT PREMISES #1 at which time he pulled into the driveway and the Camry was no longer visible to law enforcement.  Thereafter, defendant BENJAMIN CARRASCO left SUBJECT PREMISES #1 and the boxes were no longer visible on the back seat of the Camry.

27.  On May 14, 2010, law enforcement agents attempted to deliver boxes 35738 and 35745 to Andre Speraous 92 Shore Road,

---

[19]   As set forth in ¶ 10 *supra,* defendant AZARIAS MERCARD claimed to work at a law office at 224 East Main Street, Patchogue, New York.

Mount Sinai, New York 11766. As it appeared that no one was inside of the location, a notice was left advising that the boxes would be redelivered at a later date.

28. Between May 15, 2010 and May 16, 2010, several telephone calls were made from (646) 737-6683 to the Mt. Sinai Post Office inquiring about boxes 35738 and 35745. Cellular telephone number (646) 737-6683 is registered to Andrew Spero, 92 Shore Road, Mt. Sinai, New York. A review of records of defendant CARLOS CARRASCO'S cellular telephone (631) 327-7538 reveals that Andrew Spero's cellular telephone and defendant CARLOS CARRASCO'S cellular telephone had contact during the relevant time period. Similarly, a review of records of defendant BENJAMIN CARRASCO'S cellular telephone (631) 241-0557 reveals that Andrew Spero's cellular telephone and defendant BENJAMIN CARRASCO'S cellular telephone had contact during the relevant time period.

29. On May 17, 2010, the cellular telephone number (646) 737-6683 contacted the Mt. Sinai Post Office and inquired about boxes 35738 and 35745. The caller was advised that the boxes were not scheduled to be delivered thus someone should come and pick up the boxes at the post office or they would be returned to sender. Approximately 20 minutes later, defendant BENJAMIN CARRASCO arrived at the Mt. Sinai post office and asked for boxes 35738 and 35745. Boxes 35738 and 35745 were given to the defendant BENJAMIN CARRASCO, he placed them in the Camry and drove with the

15

boxes to SUBJECT PREMISES #1.    Prior to defendant BENJAMIN CARRASCO'S arrival at SUBJECT PREMISES #1, law enforcement agents observed defendant RENE SOTO outside of SUBJECT PREMISES #1 rearranging items in the trunk of a 2006 Dodge Charger NYS License Plate EDT9000 (the Charger).    Thereafter, defendant BENJAMIN CARRASCO arrived at SUBJECT PREMISES #1 and was observed entering SUBJECT PREMISES #1 carrying boxes 35738 and 35745.   Some time later, defendant BENJAMIN CARRASCO was observed leaving SUBJECT PREMIS #1 empty-handed.

30.   On May 18, 2010, defendant AZARIAS MERCADO contacted the Patchogue Post Office, identified himself and inquired about boxes 35783 and 35776. Defendant MERCADO then left a message at the post office to contact him at (646) 464-4168.[20] Later that day, law enforcement agents contacted defendant MERCADO and advised that one of the boxes was at the post office.   Later that day, law enforcement agents observed the Camry driven by defendant BENJAMIN CARRASCO with defendant MERCADO in the passenger seat arrive at the Patchogue Post Office.   Both defendants exited the Camry, went into the post office and defendant MERCADO advised post office personnel that he was there to pick up boxes 35783 and 35776.   A law enforcement agent, posing as a postal clerk, gave defendant MERCADO box 35783 but advised that box 35776 had not yet

_____

[20]    This is a cellphone number registered to defendant AZARIAS MERCADO that he used previously in connection with picking up boxes suspected of containing marijuana. See ¶ 10, *supra*.

16

arrived.   Outside of the post office, defendant MERCADO handed box
35783 to defendant BENJAMIN CARRASCO who placed the box in the back
seat of the Camry.   The Camry was followed to SUBJECT PREMISES #1
and defendant BENJAMIN CARRASCO was observed carrying box 35783
into SUBJECT PREMISES #1.   Thereafter, defendant RENE SOTO was
observed exiting SUBJECT PREMISES #1 carrying plastic bags which he
placed in the trunk of the Charger which he then drove away from
SUBJECT PREMISES #1.

31.   On May 21, 2010, law enforcement agents applied for
and were granted a search warrant for box 35776 by the Honorable A.
Kathleen Tomlinson M-10-587.   On May 24, 2010, box 35776 was
opened.  Inside of box 35776 was approximately 17 pounds of
marijuana packaged almost identically to several other marijuana
boxes seized in April 2010.  See ¶ 18 and 19, *supra*.

32.   On June 9, 2010, law enforcement established
surveillance at SUBJECT PREMISES #1.   Agents observed defendant
BENJAMIN CARRASCO arrive at SUBJECT PREMISES #1 in possession of
two cardboard boxes which he carried inside of SUBJECT PREMISES #1.
Agents also observed defendant BENJAMIN CARRASCO and defendant SOTO
together at SUBJECT PREMISES #1.

33.   On June 22, 2010, two cardboard boxes believed
to contain marijuana were mailed via Priority Mail from a Post
Office in San Rafael, California to Long Island, New York (52394
and 52387).   The labels on the boxes identified the sender as "C.

17

Knight, 360 Holly Drive, San Rafael, California 94903."[21]   Box 52394 was addressed to "T. Hernandez, 186 Commercial Blvd. Brentwood, New York 11717,"[22] was mailed at 1:34 p.m. and weighed 28 pounds, 14 ounces.  Box 52387 was addressed to "United Home Solutions, 339 Unqua Road, Massapequa, New York (SUBJECT PREMISES #2), was mailed at 1:35 p.m. and weighed 28 pounds, 13 ounces.

      33.  On June 24, 2010, law enforcement agents seized box 52394 at the Brentwood Post Office.

      34.  On June 25, 2010, law enforcement established surveillance at SUBJECT PREMISES #2.  Other agents then delivered cardboard box 52387 to the front of SUBJECT PREMISES #2.  Thereafter, agents observed defendant CARLOS CARRASCO arrive at SUBJECT PREMISES #2, take box 52387 and places it inside of a 2005 Nissan Maxima NYS license plate FDE9878 (the "Maxima").  Defendant CARLOS CARRASCO then took box 52387 to SUBJECT PREMISES #1, dropped the box off at SUBJECT PREMISES #1 and left the location.

      35.  On July 1, 2010, law enforcement agents applied for and were granted a search warrant for box 52394 by Magistrate Judge Tomlinson M-10-752.

      36.  On August 9, 2010, two cardboard boxes believed to contain marijuana were mailed via Priority Mail from the

---

[21]    Several law enforcement indicies checks revealed no references to a C. Knight associated with that location.

[22]    Several law enforcement indicies checks revealed no references to a T. Hernandez associated with that location.

Emeryville, California Post Office to Brentwood, New York (boxes 72621 and 72638).  The labels on the boxes identified the sender as "Berkeley Hat Company, 2510 Telegraph Avenue, Berkeley, CA 94704." The label on box 72621 identified the recipient as "J. Hernandez, 248 Orouke Street, Brentwood, New York 11717."  The label on box 72638 identified the recipient as "T. Janilus at 1136 Martins, Bayshore, NY 11706."  Postal records reveal that box 72621 was mailed at 2:13 p.m. and weighed 21 pounds, 3 ounces and box 72638 was mailed at 2:10 p.m. and weighed 24 pounds, 8 ounces.  Based upon the pattern established by the DEFENDANTS, I believe that boxes 72621 and 72638 will eventually be delivered to SUBJECT PREMISES #1.

37.  Based upon my training and experience and participation in drug offense investigations and investigations into the financial implications which result from violations of drug laws, and the debriefing of numerous drug dealers in the New York area, cooperating with the government, I know:

a.    that drug traffickers/drug money launderers very often place assets in names other than their own to avoid detection of these assets by government agencies;

b.    that even though these assets are in other persons' names, the drug dealers and drug money launders continue to use these assets and exercise dominion and control over them;

c.    that large-scale drug traffickers/money launders

19

maintain on hand large amounts of U.S. currency in order to maintain and finance their ongoing drug business;

d.   that drug traffickers/money launders maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the importation, transportation, ordering, sale, purchase and distribution of controlled substances. That the aforementioned books, records, receipts, notes, ledgers, etc., are maintained where the drug traffickers/money launders have ready access to them such as in their houses and places of business;

e.   that   it is common for large-scale drug traffickers/money launderers to store contraband, proceeds of drug sales, including jewelry and precious metals, and records of drug transactions in secure locations for ready access and to conceal these items from law enforcement authorities;

f.   that persons involved in drug trafficking/money launders very often conceal in secure locations, with ease of access, caches of drugs, large amounts of currency, money counting machines, financial instruments and proceeds of drug transactions, and evidence of financial transactions relating to or obtaining, from or arising from the secreting, or spending of large sums of money made from engaging in drug trafficking activities;

g.   that when drug traffickers/money launderers amass large proceeds from the sale of drugs, they then attempt to

20

legitimize these profits.   That to accomplish these goals, they utilize a variety of entities including but not limited to foreign and   domestic   banks   and   their   attendant   services,   such   as securities,  cashiers'  checks,  money  drafts,  wire  transfers,  and real   estate   business   and   financial   brokerage   houses.       Drug traffickers/money   launderers   also   attempt   to   legitimize   drug profits  by  concealing  assets  in  shell  corporations  and  business fronts.   Documents  relating  to  the  concealment  and  legitimization of   drug   profits   are   often   kept   readily   accessible   by   drug traffickers in their residences and places of business;

          h.   that   drug   traffickers/money   launderers   commonly maintain  addresses  and/or  telephone  numbers  in  books  or  papers  or electronic  telephone  directories  which  reflect  names,  addresses and/or  telephone  numbers  for  their  associates  in  the  drug/money laundering   trade   organization.      That   drug   traffickers/money launderers often keep billing records for residential, cellular and business  telephones  and  keep  the  aforementioned  books,  papers, electronic  directories  and/or  records  in  their  places  of  residence or business or on their person;

          i.  that drug traffickers/money launderers often take, or cause to be taken, photographs and/or videos of themselves, their associates,  their  assets  (including  currency),  and  their  drugs. That   these   traffickers/money   launderers   usually   keep   these photographs  and/or  videos  within  their  places  of  residence  or

21

business;

j. that drug traffickers/money launderers often utilize personal computers to maintain records of drug trafficking activities and/or drug-related financial transactions and the subsequent movement of assets. That drug traffickers/launderers often utilize telephone answering machines, facsimile machines, telex communication systems, paging devices and other forms of electronic or wire communication to further their drug trafficking and drug-related financial activities.

38. Numerous surveillances and interviews conducted by agents and officers and discussions with other law enforcement agents have established that it is the inevitable custom and practice of individuals involved in the narcotics distribution business/drug money laundering to keep records of proceeds of the drug enterprise in or near their person, vehicle or private residences. As a result of our training and experience we have determined that traffickers of controlled substances or those that assist them, maintain and tend to retain accounts of records of those transactions for long periods of time. Such records typically detail, usually in a simple code, the customers, the amounts of controlled substances obtained and distributed and/or the cash amounts paid and outstanding, or other funds which are expended or owed. These records have crucial importance both to the continuation of any drug distribution network where records of

22

past transactions are necessary to continue the transactions. Intervening issues such as: the history of prior payments made, the quality of the drugs received, seizures of the drugs by law enforcement, thefts by other drug dealers, etc., all require detailed records of these past transactions to discuss and appropriately resolve terms of current drug sales.

39.   The custom and practice in the marijuana trade is for traffickers to maintain detailed historical records in an accessible but secure location.  Such locations, as noted above, commonly used are: in or near their person, vehicle or private residences.  These may be in the form of collected paper scraps of sophisticated computer accounts.  Copies generally are kept in a more secure location such as safe deposit box or a hidden compartment or safe.  In addition, wholesale drug dealers often maintain financial instruments, and other items of value and/or proceeds of drug transactions in such locations.  Such traffickers also must maintain evidence of prior financial transactions relating to obtaining, transferring, secreting or spending large sums of money acquired from the proceeds of their distribution of controlled substances in order to document and collect past drug debts.

40.   Based on years of investigative experience, it is your deponent's belief that drug dealers employ various methods of concealment to secure and camouflage drug proceeds and drug

23

records.   Drug traffickers/money launderers commonly use safety deposit boxes, safes and vaults to conceal and secure these illicit drug proceeds and the requisite drug records required to maintain these drug businesses.   These safes are normally kept in or extremely close to the drug dealer's premises in order to have rapid access to the contents therein.   And, as experience has shown, these safes are concealed within the drug traffickers/ money launderers' premises in order to evade detection by law enforcement authorities or others without a need to know.

41.   As a result of our training and experience, we have determined that drug traffickers/money launders, as a custom of the trade, often possess weapons and ammunition in order to protect their illegal assets and contraband.

42.   Based upon my training and experience and as a result of the information I have learned during this investigation, I believe that inside of SUBJECT PREMISES #1, SUBJECT PREMISES #2 and SUBJECT PREMISES #3, within the Eastern District of New York, there will be certain property, namely the items set forth on ATTACHMENT A hereto, all of which constitute evidence, fruits and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846.   The items to be seized include any of the items listed in ATTACHMENT A that are maintained within boxes or other closed or locked containers, including safes and other containers that may be further secured by key locks (or combination

24

locks) of various kinds.

WHEREFORE, your deponent respectfully requests that search warrants be issued authorizing any federal agent or their authorized representatives, to search the SUBJECT PREMISES for the items listed in ATTACHMENT A.

WHEREFORE, it is respectfully requested that arrest warrants be issued for the defendants RENE SOTO, BENJAMIN CARRASCO, CARLOS CARRASCO and AZARIAS MERCADO so that they may be dealt with according to law.

---

ENZO GRGUROVICH
United States Postal Inspector


Sworn to before me this
12th day of August, 2010

---

MICHAEL L. ORENSTEIN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

25

## ATTACHMENT A

(Items to Be Seized)

     (1)   drugs, drug paraphernalia, scales, drug residue, dilutants and materials related to distributing and/or manufacturing drugs;

     (2)   books and records, showing cash transactions, prices and quantities of drugs bought and sold;

     (3)   books and records showing the names, addresses and telephone numbers of purchasers and suppliers of drugs, as well as the identities of confederates in drug trafficking;

     (4)   pagers, electronic organizers, cellular telephones and related bills and receipts;

     (5)   motor vehicle records, rental vehicle records, telephone bills, property records showing ownership of assets purchased with drug proceeds;

     (6)   currency used to purchase drugs, or reflecting proceeds of sales of drugs; and

     (7)   banking and financial records, to include wire transfer receipts, bank deposit and withdrawal slips, and any other document evidencing a financial transaction that was conducted with proceeds;

all of which constitute evidence, fruits and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846 and Title 18, United States Code Section 1956; and

     (8)   firearms, which constitute evidence of violations of Title 18, United States Code, Section 924(c).

     The items to be seized include any of the above items that are maintained within boxes or other closed or locked containers, including safes and other containers that may be further secured by key locks (or combination locks) of various kinds.